IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARBARA MCDOUGALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-666 |
| | ) | |
| SHERIFF RALPH E. KERSEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In 2017, defendant Jessica Sadovnikov,[1] a detective in the Scotland County

Sheriff's Office, sought and obtained warrants for the arrest of plaintiff Barbara

McDougald for financial crimes Ms. McDougald allegedly committed against her mother

years earlier while in charge of her mother's finances. These charges were eventually

dismissed. Ms. McDougald now brings suit against Detective Sadovnikov, Sheriff Ralph

Kersey, and Fidelity and Deposit Company of Maryland, alleging that she was arrested

without probable cause and asserting claims under state and federal law. The Magistrate

Judge recommended granting the defendants' motions for summary judgment, primarily

because he found there was probable cause for Ms. McDougald's arrest.

Ms. McDougald objects to the recommendation. Her evidence supports the

inference that that Detective Sadovnikov provided incomplete and misleading

---

[1] Detective Jessica Sadovnikov has changed her name to Jessica Impson, *see* Doc. 29-19 at
¶ 1, and some of the evidence refers to her by this name. For clarity and consistency, the Court
refers to her as Detective Sadovnikov.

information to the state court magistrate who issued the arrest warrants and that any reasonable officer would have doubted the truth of the largely uncorroborated factual assertions made by Ms. McDougald's mother, who had been declared incompetent and had dementia. Because her evidence raises disputed questions of material fact, summary judgment on Ms. McDougald's claims against Detective Sadovnikov based on unlawful seizure and malicious prosecution is not appropriate.

For reasons explained *infra*, the Court will grant the summary judgment motion as to Ms. McDougald's substantive and procedural due process claim against Detective Sadovnikov and her *Monell* claim against Sheriff Kersey. Summary judgment is denied as to all other claims.

## I.    Overview[2]

In January 2013, after a mental and physical decline, Jessie Terry moved in with her daughter, the plaintiff Ms. McDougald, Doc. 35-1 at ¶¶ 3, 14–16, and executed a power of attorney authorizing her daughter to act on her behalf. *Id.* at ¶¶ 17–18; Doc. 29-2. A week later, a physician in Virginia found Ms. Terry to be mentally incompetent. Doc. 29-3. For the next two years, Ms. McDougald assisted her mother physically, with living arrangements, and with financial management. Doc. 35-1 at ¶¶ 20–29.

In September 2015, Ms. Terry and Beulah Ross came to the Sheriff's office and spoke with Detective Jessica Sadovnikov; they accused Ms. McDougald of stealing from

---

[2] The facts are stated in the light most favorable to the plaintiff, the non-moving party. They are outlined in overview form here and in more detail elsewhere in this order as necessary for resolution of a particular issue.

2

Ms. Terry and stealing her identity. Doc. 35-13 at 3. Detective Sadovnikov began an investigation. *Id.* at 4.

After Detective Sadovnikov left the Sheriff's Office in November 2015, Doc. 29-19 at ¶ 16, Detective Annette Gooselin talked with Ms. Terry, Doc. 29-14 at ¶ 12, and did more work; she did not seek criminal charges. Doc. 35-13 at 5–6. Less than a month after Detective Sadovnikov returned to the Sheriff's Office and after minimal additional investigation, Doc. 29-19 at ¶ 18; Doc. 35-13 at 6, she sought and obtained arrest warrants for Ms. McDougald on July 21, 2017. Doc. 35-13 at 7; Docs. 29-10, 29-11, 29-12, 29-13. After obtaining more additional financial records, she sought and obtained additional warrants on July 28, 2017. Doc. 29-19 at ¶ 28; Docs. 29-16, 29-17, 29-18.

Ms. McDougald was arrested in Virginia at a medical appointment. Doc. 35-1 at ¶ 60. Ms. McDougald remained in custody for several days in Virginia and then for several more days in the Scotland County jail. *Id.* at ¶¶ 60–61. After eight days, she was released on an unsecured bond. *Id.* at ¶ 62. She was later indicted, Doc. 29-22, but all charges against her were dismissed in early 2020. Doc. 35-1 at ¶ 64.

Ms. McDougald has sued defendants Detective Sadovnikov, Sheriff Ralph Kersey, and Fidelity and Deposit Company of Maryland. Against Detective Sadovnikov, she asserts § 1983 claims for unlawful search and seizure, malicious prosecution, and due process violations, along with state law claims for trespass by a public officer, malicious prosecution, abuse of process, intentional infliction of emotional distress, and a claim upon bond. Against Sheriff Kersey, Ms. McDougald asserts a *Monell* claim, a claim of intentional infliction of emotional distress, and a claim upon bond.

3

The defendants each moved for summary judgment. Docs. 29, 31. The United States Magistrate Judge recommended granting the motions. Doc. 56. Ms. McDougald and the defendants have filed objections to the recommendation. Docs. 59–60.

## II.    Legal Standard

District courts review *de novo* the portions of a Magistrate Judge's recommendation to which the parties object. *See* 28 U.S.C. § 636(b)(1); *United States v. De Leon-Ramirez*, 925 F.3d 177, 181 (4th Cir. 2019). Otherwise, courts review for clear error. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In analyzing a summary judgment motion, courts "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). But the nonmoving party must "go beyond the pleadings" and must by his "own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (cleaned up).

## III.    Analysis

### A.  Federal Claims

#### 1.  Unlawful Seizure Claim – Detective Sadovnikov

A person seized by law enforcement "pursuant to legal process that was not supported by probable cause" and whose criminal proceedings terminate in her favor has

4

a valid claim that the seizure violates the Fourth Amendment. *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007). It is undisputed that the criminal proceedings here were terminated in Ms. McDougald's favor. At issue, then, is whether Ms. McDougald has offered sufficient evidence to show that Detective Sadovnikov deliberately or with a reckless disregard for the truth made material false statements in her testimony to the issuing magistrate, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), or omitted from her sworn testimony "material facts with the intent to make, or with reckless disregard of whether they thereby made," her testimony "misleading." *Miller*, 475 F.3d at 627 (cleaned up).

"Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity." *Id.* (cleaned up). This means that the officer, in light of all the evidence available to him, "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). "With respect to omissions, reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts" she knew "would negate probable cause." *Miller*, 475 F.3d at 627 (cleaned up). Negligence or innocent mistake does not provide a basis for a constitutional violation. *Id.* at 627–28.

Here, Detective Sadovnikov sought and received warrants on two different occasions. On neither occasion did she provide the magistrate with a written affidavit; instead, as allowed by North Carolina law, she gave her testimony orally. *See* N.C. Gen.

5

Stat. § 15A-304(d)(2). So there is no contemporaneous documentary evidence of what Detective Sadovnikov told the magistrate who issued the warrant.

The only direct evidence comes from Detective Sadovnikov's declaration and testimony given in this case, some years after the events. There is also indirect evidence from police reports written around the time and from an affidavit signed by Detective Sadovnikov a few days after she obtained the first set of warrants and which she provided to a Superior Court Judge for the purpose of obtaining financial records. Doc. 29-14.

If one only looks at Detective Sadovnikov's post-hoc declaration, Doc. 29-19, then there was, as the Magistrate Judge accurately found, probable cause for the arrest warrant. Ms. McDougald does not seriously dispute this point.

But that point begs the actual questions presented here: Did Detective Sadovnikov provide accurate and complete information to the magistrate, or did she offer testimony containing material misrepresentations and omissions made deliberately or with reckless disregard for whether they made her testimony misleading? *See Miller*, 475 F.3d at 629. And would a reasonable officer knowing what Detective Sadovnikov knew "have entertained serious doubts" as to the accuracy of the information from Ms. Terry and Ms. Ross, such that if she had reported the reasons for those doubts to the magistrate there would have been no probable cause? *Id.* at 627–29.

On these points, even by Detective Sadovnikov's account, almost all of the evidence Detective Sadovnikov had that implicated Ms. McDougald in wrongdoing came from Ms. Terry, whose ability to be an accurate witness was highly questionable. And,

6

more importantly, the evidence as summarized in the Recommendation was not, as Ms. McDougald accurately points out, viewed in the light most favorable to the plaintiff.[3]

According to Detective Sadovnikov, Ms. Ross, who was present with Ms. Terry at the Sheriff's Office, did not purport to have firsthand knowledge of Ms. McDougald's actions. Detective Sadovnikov made no effort to obtain information from Ms. McDougald before seeking the arrest warrants, Doc. 35-1 at ¶ 51, and she spoke with Ms. Terry's son, Robert Terry, about Ms. Terry's financial affairs only briefly and only after seeking the first set of warrants. Doc. 29-19 at ¶ 24–25. A more experienced officer who took over the investigation after Detective Sadovnikov left the Sheriff's Office in 2015 did not find the evidence sufficient to seek warrants. Doc. 35-13 at 5–6; Doc. 29-19 at ¶ 16; Doc. 35-40 at 12 (noting that after Detective Sadovnikov left, the case was assigned to "a different detective" who mostly did financial crimes).

---

[3] While the Magistrate Judge was correct in noting that courts generally do not make credibility determinations when ruling on summary judgment motions, Doc. 56 at 28 n.4, that does not mean that evidence undermining the credibility of a witness is absolutely and always irrelevant at summary judgment. "[W]hen questions about the credibility of key witnesses loom large and the evidence could permit the trier-of-fact to treat their testimony with skeptical scrutiny," summary judgment should be denied. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 576–77 (4th Cir. 2015) (cleaned up) (quoting *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (per curiam)); *see also Deville*, 567 F.3d at 165 (considering a false arrest claim and holding that a defendant's "uncontradicted testimony . . . could establish probable cause for the arrest," but summary judgment was improper when the plaintiffs "provided evidence that would allow the jury to disbelieve" the defendant's testimony). The court must still consider evidence that goes to credibility and look at it in the light most favorable to the nonmovants when deciding if there is any genuine issue of material fact. *See J&J Sports Prods., Inc. v. Hernandez*, No. 11-CV-749, 2013 WL 5937909, at *4 (M.D.N.C. Nov. 5, 2013); *cf. Magill v. Gulf & W. Indus., Inc.*, 736 F.2d 976, 979 (4th Cir. 1984) ("Summary judgment also is inappropriate if an issue depends upon the credibility of witnesses, because such credibility can best be determined after the trier of fact observes the witnesses' demeanor.").

7

There is also substantial evidence that Detective Sadovnikov knew Ms. Terry remained cognitively impaired to a significant degree and either hid or deliberately understated that information to the magistrate when she sought arrest warrants. For example, in the police reports from the time, Detective Sadovnikov documented Ms. Terry's 2015 acknowledgement that she remained unable to handle her financial affairs on her own, Doc. 35-13 at 3, yet the written affidavit she submitted to a Superior Court Judge in between the two dates she sought arrest warrants mentioned only that Ms. Terry had been incompetent in 2013, Doc. 29-14 at ¶ 2, and made no mention of any ongoing memory or cognitive difficulties. *See generally id.* Someone reading that affidavit would not suspect that Ms. Terry had been unable to handle her financial affairs herself during the two-year period she lived with Ms. McDougald. And contrary to Detective Sadovnikov's testimony now that in 2017 Ms. Terry "showed no signs of hesitation or confusion as she related what had happened," Doc. 29-19 at ¶ 4, two witnesses have testified that around this exact time Ms. Terry had severe problems answering even basic questions. Doc. 35-1 at ¶ 45 (noting Ms. Terry's confusion during a court hearing around this time); Doc. 35-2 at ¶ 19 (same); Doc. 35-1 at ¶ 42 (noting Ms. Terry had "severe dementia" in 2015).[4] If those witnesses are believed at trial, a reasonable jury could

---

[4] There is similar evidence undermining Detective Sadovnikov's assertion that Ms. Ross did not participate significantly in the interview. *See* Doc. 29-19 at ¶ 4. Witnesses have testified to Ms. Ross's tendency to answer questions for Ms. Terry and to assert as fact things related to Ms. McDougald's management of Ms. Terry's financial affairs about which Ms. Ross had no knowledge. *See* Doc. 35-1 at ¶ 45; Doc. 35-2 at ¶ 19. There is also evidence, mentioned *infra*, that Wells Fargo representatives told Detective Sadovnikov that Ms. Terry was confused about her reverse mortgage.

8

conclude that Detective Sadovnikov falsely told the magistrate that Ms. Terry appeared cognitively intact and that if she had accurately disclosed Ms. Terry's degree of impairment the magistrate would not have issued warrants for arrest based almost wholly on Ms. Terry's reports.

To the extent Detective Sadovnikov had documentary evidence tending to support charges against Ms. McDougald at the time she sought either set of warrants, it was weak. It is not entirely clear what financial records she obtained before seeking the warrants versus after, but those records filed as evidence here reflect transactions, not necessarily who made the transactions. *See* Doc. 29-4; Doc. 29-5. And they say nothing about whether the transactions were undertaken for criminal purposes, as opposed to meeting Ms. Terry's needs and paying her debts. Detective Sadovnikov reports receiving additional records from Wells Fargo and relying on these records in seeking the second set of arrest warrants, Doc. 29-19 at ¶ 28, but we only have her word for what these records said.

The evidence further supports the inference that Detective Sadovnikov exaggerated or misrepresented information when giving her probable cause testimony, as she did in the affidavit to the Superior Court Judge submitted to obtain copies of financial records. In that affidavit, for example, Detective Sadovnikov quotes a Wells Fargo representative as saying that Ms. McDougald "took out a reverse mortgage on Terry's residence sometime in 2006," Doc. 29-14 at ¶ 10, but the Wells Fargo record itself, which Detective Sadovnikov appears to have had in her police file, shows that Ms. Terry's claims that she did not know about the reverse mortgage were unfounded. *See* Doc. 29-8

at 2 ("Contact with Ms. Terry throughout the life of the loan indicates that she was very well aware that she has a reverse mortgage on her property."). Detective Sadovnikov told the Superior Court Judge that "investigators from Wells Fargo . . . have substantiated the fraud and identity theft allegations against McDougald," Doc. 29-14 at ¶ 6, but a review of the Wells Fargo documentation is significantly less incriminating. We only have Detective Sadovnikov's word for what the Wells Fargo investigator allegedly told her beyond what is in the Wells Fargo reports. A reasonable jury could find that Detective Sadovnikov similarly, or perhaps even to a larger extent, exaggerated the evidence against Ms. McDougald when she testified in front of the magistrate to establish probable cause the first time.

Aside from exaggerations, Ms. McDougald has also pointed to inaccuracies and inconsistencies in the warrants, Docs. 29-10, 29-11, 29-12, 29-13, 29-16, 29-17, 29-18, Detective Sadovnikov's motion to compel disclosure of financial records, Doc. 29-14, Detective Sadovnikov's affidavit in support of a post-arrest search warrant, Doc. 35-27, and her declaration, Doc. 29-19, all of which taken together further undermine Detective Sadovnikov's credibility. For example, several of the warrants stated that Ms. Terry had been declared mentally incompetent or disabled by 2006 or 2007, *see* Docs. 29-10, 29-11, 29-12, but there is no evidence to support that claim, which appears to be false, and Detective Sadovnikov had evidence that the incompetence finding came in January of 2013. Doc. 29-3. Detective Sadovnikov also inaccurately, or perhaps falsely, affirmed to a Superior Court Judge that she had specialized training in financial crimes, Doc. 35-27 at 2, which she admits now that she did not. Doc. 35-40 at 6.

10

There is also evidence that Detective Sadovnikov lied to Ms. McDougald's lawyer soon after obtaining the warrants and before Ms. McDougald's arrest. Detective Sadovnikov learned during her investigation that Ms. McDougald was in Northern Virginia recovering from breast cancer. Doc. 29-19 at ¶ 26. Detective Sadovnikov contacted hospitals in Northern Virginia, sending them copies of the warrants if asked, in an effort to locate Ms. McDougald. Doc. 35-13 at 8. Ms. McDougald learned of the warrants and retained a lawyer. Doc. 35-1 at ¶ 58–59. That lawyer contacted Detective Sadovnikov, and Detective Sadovnikov agreed to let Ms. McDougald turn herself in. Doc. 42-1 at ¶ 7.[5] Despite this, when Detective Sadovnikov received a phone call from a nurse at the Prince Williams County Medical Center, letting her know that Ms. McDougald had arrived for her doctor's appointment, Detective Sadovnikov told the nurse to call "911 and to have the police respond." Doc. 35-13 at 8. Ms. McDougald was arrested at the hospital and spent several days in custody. Doc. 35-1 at ¶¶ 60–62.

Finally, Ms. McDougald has offered substantial evidence that Detective Sadovnikov has a history of making exaggerated and false claims in her work as a law enforcement officer. *See* Doc. 1-2; Doc. 35-3 at ¶ 37; Doc. 35-30; Docs. 37-1, 37-2, 37-3, 37-4; Doc. 37-7 at 4; Doc. 37-8. This evidence undermines Detective

---

[5] Ms. McDougald moved to file this additional evidence. Doc. 42. This evidence is relevant to Detective Sadovnikov's credibility and the defendants have not seriously contended otherwise. *See* Doc. 44 (objecting to Ms. McDougald's motion because she had no right to turn herself in). The Court sustains Ms. McDougald's objection, Doc. 60 at 23–24, to the Magistrate Judge's decision denying this motion. Doc. 56 at 27–28. As discussed *supra* page 7 note 2, the Magistrate Judge misapplied the rule about a witness's credibility. Ms. McDougald's motion to file additional evidence, Doc. 42, will be granted.

11

Sadovnikov's credibility. Her disciplinary history resulting from these acts of misconduct further suggests a potential motive for her misconduct: an effort to impress her current employer and overcome any doubts about her competence by "solving" a cold case. Other evidence tends to support an inference that Detective Sadovnikov will exaggerate and misstate facts when it makes her "look better." *See, e.g.*, Doc. 35-28 (May 1, 2018, email written by Detective Sadovnikov exaggerating the number of charges against Ms. McDougald and inaccurately or falsely stating Ms. McDougald faced federal charges).

"Not every mix-up in the issuance of an arrest warrant . . . automatically constitutes a constitutional violation for which a remedy may be sought." *Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985). Officers are not required to "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). However, the Supreme Court has made clear that police officers cannot intentionally lie in warrant affidavits, nor can they recklessly exclude material information. *United States v. Leon,* 468 U.S. 897, 922–23 (1984); *Franks*, 438 U.S. at 155–56. "An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." *Miller*, 475 F.3d at 630–31.

Here, Ms. McDougald's direct and circumstantial evidence shows or gives rise to an inference that Detective Sadovnikov acted on largely uncorroborated claims by a

12

woman with significant cognitive impairments, that she failed to inform judicial officials of those cognitive problems and overstated the evidence to judicial officials, and that she had a history of making false assertions in her work as a law enforcement officer. Had the magistrate been fully and accurately informed of the extent of the primary witness's memory issues, the undisputed fact that Ms. McDougald lived with Ms. Terry during most of the relevant time and needed help with her finances which Ms. McDougald provided, the ambivalence of the then-available documentary evidence as to whether that help was appropriate or criminal, and the facts underlying the reverse mortgage, he would not have found probable cause to issue the arrest warrants. In sum, viewing the evidence in the light most favorable to Ms. McDougald, a reasonable jury could find that Ms. McDougald's arrest lacked probable cause and thus find for her on the unlawful seizure claim.

Detective Sadovnikov contends that even if there is sufficient evidence for a jury to find that she violated Ms. McDougald's constitutional rights, she is entitled to qualified immunity. Doc. 30 at 19–21. Government officials are protected from § 1983 liability by qualified immunity if their conduct does not violate clearly established constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While a "case directly on point" is not required, "existing precedent must have placed the . . . constitutional question beyond debate."

13

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (cleaned up). This is a question of law. *Hupp v. Cook*, 931 F.3d 307, 317–18 (4th Cir. 2019).

As the Court just discussed, a reasonable jury could find that Detective Sadovnikov violated Ms. McDougald's Fourth Amendment rights. And those rights were clearly established. "[T]he Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or with reckless disregard for the truth makes material false statements or omits material facts." *Miller*, 475 F.3d at 631 (cleaned up) (collecting cases).

Despite this, Detective Sadovnikov suggests that she is entitled to qualified immunity because the magistrate found probable cause. *See* Doc. 30 at 20. A neutral magistrate's finding of probable cause does "weigh[] heavily *toward* a finding that [the defendant] is immune from suit." *Hupp*, 931 F.3d at 324. But applying that precept when the facts support an inference that the probable cause finding was based on misrepresentations and inaccuracies by Detective Sadovnikov makes no sense. A defendant "is not absolved from liability when the magistrate's probable-cause finding is predicated solely on a police officer's false statements." *Hupp*, 931 F.3d at 324 (cleaned up); *see also Manuel v. City of Joliet*, 580 U.S. 357, 137 S. Ct. 911, 918 (2017).

There are disputed questions of material fact as to whether Detective Sadovnikov told the magistrate judge the truth or recklessly hid significantly material facts from the magistrate. The constitutional right to a warrant based on probable cause, not false or misleading statements by a law enforcement officer, is well-established. Detective

14

Sadovnikov is not entitled to summary judgment on the Fourth Amendment unreasonable seizure claim.

## 2. Malicious Prosecution Claim – Detective Sadovnikov

Ms. McDougald's second claim for relief is a § 1983 claim for malicious prosecution. Under federal common law, malicious prosecution requires "that (1) the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and (2) that the criminal proceedings have terminated in plaintiff's favor." *Massey v. Ojaniit,* 759 F.3d 343, 356 (4th Cir. 2014) (cleaned up); *see Hupp v. Cook,* 931 F.3d 307, 324 (4th Cir. 2019).

As previously discussed, a reasonable jury could find that the arrest warrants for Ms. McDougald were not supported by probable cause. There is no dispute that Ms. McDougald was arrested and that the criminal proceedings terminated in her favor.

Detective Sadovnikov asserts that she is entitled to qualified immunity on this claim because "there was no preexisting 'clearly established' case law prohibiting the seeking of arrest warrants where a credible victim reports, at a minimum, financial criminal activity that is corroborated by both public and private outside institutions." Doc. 30 at 20. But this argument ignores the disputes inherent in her characterization; Ms. Terry was not necessarily credible, and the corroborating evidence was weak.

The Fourth Circuit has stated that in the context of a § 1983 malicious prosecution claim that "the Fourth Amendment right to be seized only on probable cause" is "clearly established." *Humbert v. Mayor & City Council of Balt. City,* 866 F.3d 546, 561 (4th Cir. 2017). It is "clearly established that the Constitution [does] not permit a police officer

15

deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." *Id.* at 562 (cleaned up). Summary judgment is denied on this claim.

### 3. Substantive and Procedural Due Process – Detective Sadovnikov

Ms. McDougald also brings a § 1983 claim against Detective Sadovnikov for violations of substantive and procedural due process rights under the Fourteenth Amendment. The Magistrate Judge recommended granting summary judgement on this claim because there was probable cause for the warrants even without any inaccurate information Detective Sadovnikov may have supplied. Doc. 56 at 16. As this Court has already explained, the Magistrate Judge was incorrect on this point. Nonetheless, summary judgment for Detective Sadovnikov on this claim is appropriate.

Because the charges against her were dismissed, and the alleged loss of liberty was pretrial detention, Ms. McDougald cannot succeed on her due process claim. *See Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) (plurality opinion) (claims of pretrial deprivations of liberty are properly brought under the Fourth Amendment, not substantive due process); *see also id.* at 276 (Ginsburg, J., concurring); *see also Manuel v. City of Joliet*, 580 US 357, 137 S. Ct. 911, 918 (2017) (noting five justices' agreement); *Wilkes v. Young*, 28 F.3d 1362, 1364 n.2 (4th Cir. 1994) ("[A]n individual alleging that he was prosecuted in the absence of probable cause states no substantive due process claim."). And the Fourth Circuit has held that the "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from

16

the fabrication." *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014). Courts interpreting this language from *Massey* have persuasively held that plaintiffs cannot state a claim for a due process violation when the charges against them were dismissed or they were not convicted of any crime,[6] and when the alleged "loss of liberty" was pretrial detention. *See Osborne v. Georgiades*, No. 14-CV-182, 2017 WL 3978485, at *6 (D. Md. Sept. 11, 2017), *aff'd*, 778 F. App'x 220 (4th Cir 2019) (per curiam) (unpublished). Summary judgment is granted on this claim.

### 4. *Monell* Claim – Sheriff Kersey

Ms. McDougald contends that Sheriff Kersey is liable to her under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Detective Sadovnikov violated Ms. McDougald's rights (1) "pursuant to an official adopted policy" of the Scotland County Sheriff's Office, and (2) "pursuant to Sheriff Kersey's failure to train and screen his employees for hiring." Doc. 38 at 13.

Sheriff Kersey asserts that this claim must fail "because there was no violation of [Ms. McDougald's] constitutional rights." Doc. 32 at 19. The Magistrate Judge agreed. Doc. 56 at 24. However, as previously explained, there is sufficient evidence for a jury to find that Detective Sadovnikov violated Ms. McDougald's Fourth Amendment rights.

Nonetheless, Ms. McDougald's *Monell* claim against Sheriff Kersey will be dismissed. The bulk of her claim against Sheriff Kersey is based on Detective

---

[6] *See Willis v. Ruff*, No. 20-CT-3202, 2022 WL 4181666, at *5 (E.D.N.C. Aug. 19, 2022), *Whitehurst v. Robb*, No. 21-CV-76, 2022 WL 2760464, at *4 (E.D.N.C. July 14, 2022), *Norton v. Tabron*, No. 16-CV-56, 2016 WL 5867045, at *6 (E.D.N.C. Oct. 6, 2016), *aff'd*, 727 F. App'x 762 (4th Cir. 2018) (per curiam) (unpublished).

Sadovnikov's violation of North Carolina law when seeking financial records. *See* Doc. 38 at 14–18. But a constitutional violation cannot be premised solely on a violation of state law. *See California v. Greenwood*, 486 U.S. 35, 43 (1988) ("We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs."); *Virginia v. Moore*, 553 U.S. 164, 171 (2008) (noting that "whether state law authorized" a search or seizure is "irrelevant" in the Fourth Amendment analysis). Even with the generous assumption that Detective Sadovnikov's search of her financial records violated state law, and that this violation was pursuant to Sheriff Kersey's policy, Ms. McDougald has not shown that this method of conducting the search of her financial records amounts to a constitutional violation.

Ms. McDougald also claims that Sheriff Kersey is liable under *Monell* based on his hiring and training of Detective Sadovnikov. But she has pointed to no particular policy and has not identified any particular failure that specifically led to the misconduct here. *See* Doc. 38 at 14 (contending that Sheriff Kersey "should have been aware" of Detective Sadovnikov's "checkered conduct" and was "deliberately indifferent").

To survive summary judgment on these claims, Ms. McDougald must provide evidence of more than "an instance of inadequate screening," which, in this context, is insufficient for a jury to find that Sheriff Kersey acted with "deliberate indifference" as to how his hiring and training decisions could lead to a deprivation of constitutional rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1967) (hereinafter *Bryan*). Negligence is not enough. *Daniels v. Williams*, 474 U.S. 327, 335–36 (1986).

18

Sheriff Kersey did not call any of Detective Sadovnikov's references before hiring her. Doc. 35-41 at 8. Ms. McDougald's expert testified that Detective Sadovnikov's record shows she was not competent to be a sworn law enforcement officer. Doc. 35-3 at 7 ¶ 17. But Sheriff Kersey's office did run a background and he reviewed Detective Sadovnikov's personal history statement with her, page by page, asking her about some of her past misconduct and discipline. *See id.* at 5–7.

Even viewing the facts in the light most favorable to Ms. McDougald, this evidence shows a disagreement about competence, not deliberate indifference to competence. "[A]n instance of inadequate screening is not enough to establish deliberate indifference." *Bryan*, 520 U.S. at 411 (cleaned up). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* "The mere presence of red flags on an application is not enough," and more must be shown than "a mere failure to follow every potential discrepancy on an application." *Tarashuk v. Orangeburg Cnty.*, No. 19-CV-2495, 2022 WL 867291, at *4 (D.S.C. Mar. 23, 2022); *see also id.* ("Section 1983 cannot be deployed to put routine hiring decisions by official actors under a constitutional microscope.").

Nor can Ms. McDougald show that Sheriff Kersey acted with deliberate indifference in training Detective Sadovnikov. Inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference

19

to the rights of persons with whom the police come into contact." *City of Canton, v. Harris*, 489 U.S. 378, 388 (1989).

Ms. McDougald claims that Sheriff Kersey acted with deliberate indifference in failing to train his officers in "Fourth Amendment rights," "investigating financial crimes, elder abuses, or determining jurisdiction for crimes." Doc. 38 at 20. But the evidence in the record does not support this contention. While Sheriff Kersey did not require Detective Sadovnikov "to receive any additional training prior to accepting employment with the Scotland County Sheriff's office," Doc. 35-41 at 8, he did require that she have completed the Basic Law Enforcement Training Program curriculum from the North Carolina Sheriffs' Education and Training Standards Commission. Doc. 32-8 at 4 ¶ 7. This curriculum currently involves over 600 hours of instruction, and individuals must pass a comprehensive exam to complete the program. *Id.* Additionally, all Scotland County Sheriff Deputies are required to undergo at least 30 hours of training each year, also designed and directed by the Sheriffs' Education and Training Standards Commission. *Id.* at 4 ¶ 8.

Detective Sadovnikov met these training requirements while employed by Sheriff Kersey. *Id.* at 5 ¶ 10. The fact that she was not trained specifically "in investigating financial crimes, elder abuses, or determining jurisdiction for crimes," *see* Doc. 38 at 20 (citing Doc. 35-40 at 42), is not enough to show deliberate indifference.

It is not enough to prove that Ms. McDougald's arrest "could have been avoided if" Detective Sadovnikov "had better or more training," because "[s]uch a claim could be made about almost any encounter resulting in injury." *City of Canton*, 489 U.S. at 391.

20

"[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding" Sheriff Kersey liable. *Id.*

The facts in the record may support an inference that Detective Sadovnikov made mistakes, that she was not a good officer, that she acted unreasonably or negligently in her investigation of Ms. McDougald, or that she intentionally or recklessly misled the magistrate when seeking arrest warrants. But this is not enough to find that Sheriff Kersey was deliberately indifferent to Ms. McDougald's constitutional rights when hiring or training Detective Sadovnikov. For these reasons, summary judgment is granted on Ms. McDougald's *Monell* claim against Sheriff Kersey.

### B. State Law Claims

#### 1. Public Official Immunity

The defendants assert that public official immunity bars all of Ms. McDougald's state law tort claims. "The doctrine of public official immunity is a derivative form of governmental immunity." *Hart v. Brienza*, 246 N.C. App. 426, 431, 784 S.E.2d 211, 215 (2016) (cleaned up). It "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties." *Bartley v. City of High Point*, 381 N.C. 287, 294, 873 S.E.2d 525, 533 (2022). But "[a]n individual will not enjoy the immunity's protections if his action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Id.* at 533 (cleaned up).

"[A] malicious act is one which is (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Id.* at 534 (cleaned up). "An act is

wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (cleaned up). And "[g]ross violations of generally accepted police practice and custom contributes to the finding that officers acted contrary to their duty." *Id.* (cleaned up). [7]

The North Carolina Supreme Court has held that to "survive a motion for summary judgment based on public official immunity, a plaintiff must make a prima facie showing that the defendant-official's tortious conduct falls within one of the immunity exceptions." *Id.* One of these is the "malice exception." *See id.*; *see also Wilcox v. City of Asheville*, 222 N.C. App. 285, 291, 730 S.E.2d 226, 232 (2012). If there is a genuine dispute as to whether the officer acted with malice, summary judgment is improper. *See Bartley*, 873 S.E.2d at 536–37.

There is a genuine issue of material fact as to whether Detective Sadovnikov acted maliciously in submitting false and incomplete information to the magistrate who issued the warrant. It cannot be denied that it is a gross violation of generally accepted police practice to lie to a magistrate when seeking an arrest warrant, given that such acts are well-established as unconstitutional. Beyond this, there is also evidence of actual malice.

---

[7] The Magistrate Judge incorrectly stated that "[p]ublic official immunity does not shield against an intentional tort." Doc. 56 at 22. As noted by the defendants in their objection, Doc. 59, this is incorrect. The relevant distinction in this case is not whether the public official's action was an intentional tort or mere negligence. It is instead whether the act was done with corruption or malice. *See Bartley*, 873 S.E.2d at 536–37. The Court sustains the defendants' objection to this part of the Magistrate Judge's recommendation, although it disagrees with the defendants' assertion that Ms. McDougald has failed to show malice. *See infra* page 23.

First, on the drive from Virginia to Scotland County Detective Sadovnikov refused to stop smoking in the car even after Ms. McDougald told her she just left the hospital for issues with her lungs and was having trouble breathing; Detective Sadovnikov also said that she had seen to it that Ms. McDougald would be arrested in Virginia so she could "take a road trip to Virginia and party." *See* Doc. 35-1 at ¶ 61. Second, as summarized earlier, Detective Sadovnikov made false statements to the Superior Court Judge who issued the order for the bank records, *see supra* page 10, and to other law enforcement officers about the scope of the charges Ms. McDougald faced. *See* Doc. 35-28. Finally, she told Ms. McDougald's lawyer that Ms. McDougald could turn herself in, Doc. 42-1 at ¶ 7, yet she very soon encouraged a Virginia health care provider to call law enforcement to arrest Ms. McDougald at a doctor's appointment for cancer. Doc. 35-13 at 8.

The evidence supports the inference that Detective Sadovnikov was acting maliciously toward Ms. McDougald. Because there is a genuine dispute of material fact as to whether Detective Sadovnikov acted maliciously, public official immunity does not protect Detective Sadovnikov from a trial on the state law tort claims. *See Bartley*, 873 S.E.2d at 534.

### 2. Trespass by a Public Officer Claim – Detective Sadovnikov

Ms. McDougald has brought a state law claim for trespass by a public officer against Detective Sadovnikov. Under North Carolina law, plaintiffs may bring claims against public officers for trespass "under color of his office and constituting a wrongful invasion of the rights of third persons by force shown or imputed." *Fowler v. Valencourt*, 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993). Claims of false arrest and false

23

imprisonment against a public officer acting under the color of his or her office are trespass by a public officer claims. *See id.* at 348–50 (holding that false arrest and imprisonment claims brought against a police officer were trespass by a public officer claims, even if not phrased that way by the plaintiff, in part because trespass "includes assault, battery, false imprisonment, and false arrest").

As Detective Sadovnikov accurately contends, the existence of probable cause would bar these claims. *Adams v. City of Raleigh*, 245 N.C. App. 330, 335, 782 S.E.2d 108, 113 (2016); *see also Moore v. Evans*, 124 N.C. App. 35, 42–43, 476 S.E.2d 415, 421–22 (1996) (explaining that one element of the state claim of false imprisonment "is the absence of probable cause"); *Thomas v. Sellers*, 142 N.C. App. 310, 315–16, 542 S.E.2d 283, 287 (2001). But, as previously discussed, a reasonable jury could find that there was not probable cause for Ms. McDougald's arrest.

### 3. Malicious Prosecution – Detective Sadovnikov

In addition to her federal claim of malicious prosecution, Ms. McDougald asserts a state law malicious prosecution claim against Detective Sadovnikov. To establish malicious prosecution under North Carolina state law, four elements must be met: "(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 450, 642 S.E.2d 502, 505 (2007) (cleaned up).

Taking the evidence in the light most favorable to Ms. McDougald, all of these elements are met here. It is undisputed that Detective Sadovnikov initiated the

24

proceeding against Ms. McDougald. The Court has already discussed that a reasonable

jury could find that (1) Detective Sadovnikov acted with malice, *supra* page 23, and (2)

there was a lack of probable cause to arrest Ms. McDougald. *Supra* pages 7–13. Lastly,

it is undisputed that the proceedings terminated in favor of the plaintiff. For these

reasons, a reasonable jury could find for Ms. McDougald on this claim.

### 4. Abuse of Process – Detective Sadovnikov

Ms. McDougald's third state law claim is for abuse of process. "Abuse of process

is the misapplication of civil or criminal process to accomplish some purpose not

warranted or commanded by the process." *Pinewood Homes, Inc. v. Harris*, 184 N.C.

App. 597, 602, 646 S.E.2d 826, 831 (2007) (cleaned up). An abuse of process claim

requires the plaintiff to show "(1) that the defendant had an ulterior motive to achieve a

collateral purpose not within the normal scope of the process used, and (2) that the

defendant committed some act that is a malicious misuse or application of that process

*after issuance* to accomplish some purpose not warranted or commanded by the writ."

*Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 210, 794 S.E.2d 898, 905

(2016) (cleaned up). "The ulterior motive requirement is satisfied when the plaintiff

alleges that the prior action was initiated by the defendant or used by him to achieve a

purpose not within the intended scope of the process used." *Hewes v. Wolfe*, 74 N.C.

App. 610, 614, 330 S.E.2d 16, 19 (1985).

Beyond the probable cause arguments that the Court has already discussed at

length, the parties do not spend much time on this claim in their briefing. Ms.

McDougald contends that Detective Sadovnikov abused the arrest warrant process with

25

the ulterior motive of improving her reputation in the Sheriff's Office.[8]  Ms. McDougald

has offered evidence of Detective Sadovnikov's past misconduct and resulting

disciplinary history, much of which was recent.  *Supra* page 12.  As discussed, this

evidence supports an inference that Detective Sadovnikov wanted to impress her current

employer and overcome any doubts about her competence by "solving" a cold case.  *Id.*

Other evidence tends to support an inference that Detective Sadovnikov will manipulate

facts and evidence when it makes her "look better."  *See, e.g.*, Doc. 35-28 (May 1, 2018

email written by Detective Sadovnikov exaggerating the number of charges against Ms.

McDougald and inaccurately or falsely stating Ms. McDougald faced federal charges).

There is a genuine dispute of material fact about whether Detective Sadovnikov had an

ulterior motive for seeking arrest warrants for Ms. McDougald.  Summary judgment is

denied on this claim.

> ### 5.  Intentional Infliction of Emotional Distress – Detective Sadovnikov and Sheriff Kersey

Ms. McDougald brings a claim of intentional infliction of emotional distress

against Detective Sadovnikov and Sheriff Kersey.  She contends that Detective

---

[8] Ms. McDougald also alleges that Detective Sadovnikov's ulterior motive was to "to arrest a person without probable cause and to allow Sadovnikov to search plaintiff *after* the arrest was made," and to "subvert the safeguards of the search warrant process and procedure." Doc. 1 at ¶ 114.  She has not addressed these theories in the briefing and has not pointed to any evidence supporting these theories; the Court treats these contentions as abandoned. *See* Doc. 38 at 43–44 (arguing that the ulterior motive was "to improve her reputation in the Sheriff's Office"); *see also* Doc. 56 at 17 (Magistrate Judge's recommendation noting that Ms. McDougald's proffered ulterior motive was "to improve her reputation in the Sheriff's Office").  In the alternative, there is no evidence beyond the evidence of the violation itself to support her theory.

Sadovnikov is liable for the tort directly, and that Sheriff Kersey is vicariously liable, as her employer.

"The essential elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Holloway v. Wachovia Bank & Tr. Co., N.A.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994) (cleaned up). Extreme and outrageous conduct is which "shocks the conscience or exceeds all bounds of decency tolerated by society" and "must be so outrageous in character, and so extreme in degree, to be regarded as atrocious, and utterly intolerable in a civilized community." *Russ v. Causey*, 732 F. Supp. 2d 589, 607 (E.D.N.C. 2010) (cleaned up), *aff'd,* 468 F. App'x 267 (4th Cir. 2012) (unpublished). An act that is performed with "reckless indifference to the likelihood that emotional distress may result" is sufficient to satisfy the intent requirement. *Dickens v. Puryear*, 302 N.C. 437, 449, 276 S.E.2d 325, 333 (1981).

The Magistrate Judge rejected this claim because he found probable cause for Ms. McDougald's arrest. *See* Doc. 56 at 18–19. But the evidence on this point is disputed, for reasons already explained.

The Magistrate Judge also concluded that even absent probable cause, Ms. McDougald's evidence was insufficient to raise a genuine dispute as to whether Detective Sadovnikov committed this tort. *Id.* at 19. But, viewing the evidence in the light most favorable to Ms. McDougald, the Court reaches the opposite conclusion.

Beyond the submission of false, incomplete, and misleading information to the magistrate, there is evidence of malice, as previously discussed. A jury could conclude

27

that a law enforcement officer who (1) knew that an arrest warrant was based on false or incomplete information, (2) repeatedly exaggerated the evidence and other matters relevant to the accused, and (3) agreed to let the accused turn herself in but then encouraged a health care provider to "call 911 and have the police respond" when the accused was receiving medical care has acted outrageously. That same evidence combined with the evidence about Detective Sadovnikov's behavior on the car ride with Ms. McDougald back to North Carolina, Doc. 35-1 at ¶ 61, supports an inference of intent to cause severe emotional distress.

There is also evidence that Ms. McDougald had suffered severe emotional distress. Beyond the common-sense inference that a person with no criminal history who is wrongfully accused of serious financial crimes and held in various jails for over a week would suffer severe emotional distress, Ms. McDougald has pointed to her own testimony about the resulting trauma, Doc. 35-1 at ¶¶ 61, 63, Doc. 64-2 at 5–6, as well as evidence from her therapist.[9] Doc. 64-1 at 2.

Detective Sadovnikov's motion for summary judgment is denied on this claim.

---

[9] Ms. McDougald recently moved to supplement the record to include this diagnosis and treatment plan and related deposition testimony in support of her response to the defendants' motion for summary judgment. Doc. 64. The Court grants the motion. *See* Fed. R. Civ. P. 56(e)(1) ("If a party fails to properly support an assertion of fact, . . . the court may . . . give an opportunity to properly support or address the fact."); Fed. R. Civ. P. 72(b)(3) (when reviewing a Magistrate Judge's recommendation de novo, a District Court Judge may "receive further evidence"). The evidence is relevant to Ms. McDougald's intentional infliction of emotional distress claim. The therapy record, Doc. 64-1, was produced in discovery, and Ms. McDougald was questioned about the record and her emotional distress at her deposition. Doc. 64-2. The defendants are not unfairly prejudiced by consideration of this evidence now, as they have been on notice of this evidence for some time and as they only challenged this element in oral argument, not in the initial briefing.

Ms. McDougald's claim against Sheriff Kersey for intentional infliction of emotional distress is based on *respondeat superior*. "Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the torts of its employee who is acting within the scope of his employment." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 215, 646 S.E.2d 550, 557 (2007). Sheriff Kersey contends that he cannot be held liable for this tort because Detective Sadovnikov cannot be held liable. Doc. 32 at 19. But as has been noted *supra*, a jury could find Detective Sadovnikov liable.

Sheriff Kersey makes no other argument why this claim against him should be dismissed. His motion for summary judgment is denied on this claim.

### 6. Claim Upon Bond – Detective Sadovnikov and Sheriff Kersey

Finally, Ms. McDougald brings an action on official bond against Fidelity. Under North Carolina Law, "[i]t is well settled that pursuant to the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity" and that a "suit against a public official in his official capacity is a suit against the State." *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013). While sheriffs are typically entitled to governmental immunity, "a sheriff may . . . waive governmental immunity by purchasing a bond." *Sellers v. Rodriguez*, 149 N.C. App. 619, 624, 561 S.E.2d 336, 339 (2002).

N.C. Gen. Stat. § 58-76-5 provides a plaintiff with a statutory claim against a sheriff's official bond in addition to any state common law cause of action that a plaintiff might have. *Stafford v. Barker*, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998). To bring a cause of action on an official bond under § 58-76-5, a plaintiff must allege that the bonded officer "either intentionally engaged in misconduct and misbehavior while

29

performing his custodial duties, or that he acted negligently in the performance of those duties, despite his duty to do otherwise." *Id.*

Fidelity argued, and the Magistrate Judge agreed, Doc. 56 at 25, that the claim on official bond should be dismissed because all of Ms. McDougald's claims against Sheriff Kersey failed on the merits. Because there are disputed questions of material fact as to his liability for intentional infliction of emotional distress, and in the absence of any alternative argument, the Court denies summary judgment on this claim.

## IV. Conclusion

The defendants' motions for summary judgment are granted in part and denied in part as set out in this Order. The plaintiff's motion for leave to file additional evidence and motion to supplement the record are both granted. Two motions to seal are still pending in this Court, with separate orders forthcoming as time permits.

It is **ORDERED** that:

1. The Recommendation, Doc. 56, is **NOT ADOPTED** for the reasons stated in this Order.

2. The defendant Jessica Sadovnikov's motion for summary judgment, Doc. 29, is **GRANTED** as to the plaintiff Barbara McDougald's due process claims but **DENIED** as to all other claims.

3. The defendants Sheriff Kersey and Fidelity and Deposit Company of Maryland's motion for summary judgment, Doc. 31, is **GRANTED** as to the plaintiff Barbara McDougald's *Monell* claim but **DENIED** as to all other claims.

30

4. The plaintiff Barbara McDougald's motion to file additional evidence, Doc. 42, is **GRANTED**.

5. The plaintiff Barbara McDougald's motion to supplement the record, Doc. 64, is **GRANTED**.

This the 21st day of November, 2022.

_____
UNITED STATES DISTRICT JUDGE